UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELENA FRIDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 03094 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| NYCB MORTGAGE COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Elena Fridman ("Fridman") brings a putative class action against her mortgage servicer, NYCB Mortgage Company, LLC ("NYCB"), alleging NYCB violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. and implementing Regulation Z ("Reg. Z"), 12. C.F.R. § 1026 *et seq.*, by failing to promptly credit her on-line payments. NYCB moves for summary judgment on the question of whether, by crediting her payment two days after she submitted an online payment form, NYCB failed to credit Fridman's payments as of the "date of receipt." Because the Court finds that the ACH system utilized by NYCB is an electronic fund transfer system and the Official Interpretation of Reg. Z defines the date of receipt as "when the mortgage servicer receives the . . . electronic fund transfer," NYCB was in compliance with Reg. Z. NYCB is thus entitled to judgment as a matter of law and its motion [34] is granted.

**PROCEDURAL BACKGROUND**

Fridman filed her initial Complaint [1] on April 24, 2013 and her Amended Complaint [13] on May 16, 2013. On September 6, 2013, NYCB filed its motion for summary judgment [34]. Fridman responded with a Rule 56(d) motion for leave to pursue discovery before responding to NYCB's motion [38], which was denied [41]. Fridman filed an opposition to the

motion for summary judgment [43] and a sur-reply [47]. NYCB filed a reply [46] and response to the sur-reply [56]. At the status on November 18, 2013, the parties represented that they have voluntarily paused discovery pending disposition of the motion for summary judgment.

## FACTUAL BACKGROUND[1]

Fridman has a home mortgage serviced by NYCB. Her mortgage requires payment on the first of the month, with a fifteen-day grace period. If a payment is made after the grace period, a late fee is assessed. NYCB provides several methods for borrowers to make their payments, including by mail, by telephone, by wire transfer, or electronically through NYCB's online banking system, www.mynycb.com. The payment options available through NYCB's website include same-day transfers from the borrower's internal NYCB deposit account and two-business-day transfers from the borrower's account at an external financial institution.

NYCB uses Electronic Payment Network ("EPN"), an Automated Clearing House ("ACH"), to process transfers from a borrower's external bank accounts for mortgage payments. EPN is a central clearing facility that receives and transfers ACH entries from depository financial institutions. To make an online payment, a borrower must gain online access to his or her NYCB mortgage loan account. Then the borrower views a screen with instructions for using online banking to make a mortgage payment. Those instructions alert the borrower that NYCB requires two business days to post a payment to the borrower's account. The borrower initiates the transfer of funds by providing information about his or her external financial institution account and selects a date for the payment to post to his or her account. The date may not be

---

[1] The facts in this section are derived from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. They are taken in the light most favorable to Fridman, the non-movant. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment, unless otherwise noted.

2

sooner than two business days from the date of the initiation of payment. Once the borrower has entered his or her information, the borrower must acknowledge, via a separate screen, that it takes two business days to post the payment. NYCB updates its processing of third-party-operated residential lending nightly, and it is in this processing that the ACH file requesting the transfer of funds from the borrower's external financial institution is output. If the borrower makes the request before 8:00 p.m. Eastern Time on a business day, the ACH file will be output that night. If the request is made after 8:00 p.m. Eastern Time, the ACH file output process will not happen until NYCB's nightly update processing on the next business day.

Once the ACH file is output, on the next business day NYCB forwards the ACH file (with the transaction effective posting date) to the ACH Operator at EPN. The ACH Operator forwards the ACH transaction information to the borrower's financial institution. The borrower's financial institution debits the funds from the borrower's account as instructed by the ACH Operator-established settlement date. NYCB posts the payments to the borrower's mortgage account on the effective posting date selected by the borrower. NYCB will credit the payment to the borrower's account on the selected posting date even if there is a delay in the ACH processing system.

Fridman used NYCB's online system to make her December 2012 mortgage payment. At some point in either the evening of Thursday, December 13, or the early morning of Friday, December 14, 2012, Fridman initiated a payment on her mortgage through the NYCB website. When Fridman requested that payment, she would have to have acknowledged, and then separately confirmed, that the date that payment would be posted to her account would be Tuesday, December 18, 2012. NYCB followed its ACH batch file processing procedure, outputting the ACH file after the Friday nightly update of NYCB's residential lending system.

NYCB forwarded the ACH file to the ACH operator on the next business day, Monday, December 17, 2012. NYCB credited that payment on Tuesday, December 18, 2012, the same day the funds were debited from Fridman's Bank of America account and the same day NYCB received credits for all customer credit transactions with a December 18, 2012 settlement date. Fridman was charged an $88.54 late fee for her December payment.[2]

This two-day policy was a change for Fridman, who had been accustomed to having her on-line payments posted the same day. In August 2012, NYCB consolidated its ACH processing and converted them all to a two-day system. Fridman received notice of this change in procedures by mail on June 15, 2012 and in her July and August 2012 mortgage statements. Fridman also discussed the change with a customer service representative in a phone call to NYCB on September 25, 2012—a call initiated by Fridman because she noticed that her on-line mortgage payment for September posted later than expected. That late fee was waived.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the

---

[2] The parties' statements of fact also discuss an April 2012 late payment with similar circumstances, but because the December 2012 fee is the only one mentioned in the Amended Complaint [13] and the frequency of the late fee is not relevant for this statutory analysis, the Court will discuss only the December 2012 incident.

evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

I. **Reg. Z's Prompt Crediting of Payment Language**

   A. **Reg. Z and the Official Staff Commentary**

The Dodd-Frank Wall Street Reform and Consumer Protection Act recently amended TILA to increase protections for credit consumers. Pub. L. No. 111-203, 124 Stat. 1376 (2010). One of those recent additions is a prompt crediting of payment requirement for home mortgages:

> In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency . . . .

15 U.S.C. § 1639(f) (2010). Section 1639's implementing regulation, Reg. Z, contains substantially similar language: "No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt . . . ." 12 C.F.R. § 1026.36(c)(1)(i) (2013).

Courts give particular deference to staff commentary on TILA and Reg. Z and "[u]nless demonstrably irrational, . . . staff opinions construing the Act or Regulation should be dispositive." *See Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, 528 (7th Cir. 2007) (citation

5

omitted) (internal quotation marks omitted). The Official Consumer Financial Protection Bureau Staff Commentary on Reg. Z ("Staff Commentary") explains:

> Under 1026.36(c)(1)(i), a mortgage servicer must credit a payment to a consumer's loan account as of the date of receipt. This does not require that a mortgage servicer post the payment to the consumer's loan account on a particular date; the servicer is only required to credit the payment *as of* the date of receipt.

12 C.F.R. pt. 1026, Supp. I § 1026.36(c)(1)(i), para. (1). As for "date of receipt," the Staff Commentary provides the following guidance:

> The "date of receipt" is the date that the payment instrument or other means of payment reaches the mortgage servicer. For example, payment by check is received when the mortgage servicer receives it, not when the funds are collected. If the consumer elects to have payment made by a third-party payor such as a financial institution, through a preauthorized payment or telephone bill-payment arrangement, payment is received when the mortgage servicer receives the third-party payor's check or other transfer medium, such as an electronic fund transfer.

*Id.* at para. (3). The parties' dispute hinges on whether the transaction is best viewed as NYCB receiving the equivalent of a check when the borrower fills in the on-line form, in which case the "payment instrument" is received as of the date the form is submitted, or whether the borrower is electing to have their third-party bank make the payment, so the correct date is when NYCB receives Bank of America's electronic fund transfer.

B.    **The Payment Transaction**

Fridman's position is that NYCB receives the payment instrument as soon as the borrower submits the on-line screen authorizing payment. According to this theory, the in-put screen is the equivalent of a check, therefore the date of receipt is when NYCB receives the information—either at the on-line submission or when the ACH file is created through the nightly batch processing. NYCB argues that its two-day posting procedure complies with Reg.

6

Z. It states the ACH process is a form of electronic fund transfer, therefore, under the terms of the Official Staff Commentary, NYCB's receipt is the date Bank of America transfers the funds to NYCB. According to NYCB, the on-line form is not a payment instrument or the means of the payment, but rather completing that screen initiates a request for payment from the borrower's financial institution.

NYCB convincingly argues that ACH is an electronic fund transfer process and therefore the "date of receipt"—as defined by the Staff Commentary—is when NYCB receives the funds from Bank of America. First, the Court notes that the parties cite no cases interpreting this new provision of Reg. Z and the Court could find none. However, according to the Staff Commentary for the Electronic Fund Transfer Act, *see* 12 C.F.R. § 1005.3 ("Reg. E"), ACH is a form of electronic fund transfer. Official Interpretation, 12 C.F.R. pt. 1005, Supp. I § 1005.3(b)(1)(ii); *see also U.S. v. Alhalabi*, 443 F.3d 605, 608 (7th Cir. 2006) (considering, "a type of electronic funds transfer, the automated clearing house ("ACH") program"). The ACH process described in NYCB's briefs and statement of facts is consistent with the ACH process as explained by other courts in this district, although those cases are not otherwise applicable here. *See PFG Precious Metals, Inc. v. SunTrust Bank*, No. 10 C 7709, 2012 WL 404187, at *1 (N.D. Ill. Feb. 7, 2012); *Sec. First Network Bank v. C.A.P.S., Inc.*, No. 01 C 342, 2003 WL 22299011, at *3 (N.D. Ill. Oct. 7, 2003). In this process, on Friday night, December 14, NYCB created the ACH file, which was then forwarded to the ACH Operator on the next business day, Monday, December 17, and then on to Bank of America. Bank of America debited the money from Fridman's account and transferred the funds on Tuesday, December 18, the date NYCB posted the payment to her account. The statutory definition of ACH as a form of electronic fund transfer, coupled with NYCB's practice as explained, places this payment transaction squarely

7

within the definition of "electronic fund transfer" that is considered received under Reg. Z "when the mortgage servicer receives the third-party payor's check or other transfer medium, such as an electronic fund transfer." 12 C.F.R. pt. 1026, Supp. I § 1026.36(c)(1)(i), para. (3).

Fridman puts forward two main arguments for why the on-line form should be considered the "payment instrument" under Reg. Z, neither of which have adequate support. The first is that the on-line form is the equivalent of a check, both in theory and in form, and therefore it should function as a check under the Staff Commentary and be considered received when it "reaches the mortgage servicer" on submission. While the on-line form does include a picture of a check with the routing number and account number highlighted, see Doc. 36, Ex. C, Fridman does not articulate why this would convert the form into a check, beyond stating that it is an authorization for her bank to "wire money" to NYCB. Fridman does not submit any evidence to show the image of the check does anything more than indicate to borrowers where they can locate their routing number.

And as for the on-line screen functioning as a check, Fridman does not rebut NYCB's evidence that the form is the first step in their ACH electronic fund transfer process. Fridman is clearly directing the electronic transfer of funds from her bank to NYCB. The argument that this is the equivalent of directing her bank to pay someone via check, without more, does not convince the Court, especially when the Staff Commentary took pains to separate the two. Fridman acknowledges that the Reg. Z Staff Commentary distinguishes between the first-party payor scenario where the borrower sends a check and the third-party payor scenario where the borrower instructs a third-party to make the payment. The Official Staff Commentary ties the date of prompt crediting of payment to when the mortgage servicer receives the method of payment itself—be it the physical check from the borrower or the method of payment from the

8

borrower's third-party payor. Either way, the date of receipt is when the mortgage servicer has the check or what the Staff Commentary considers to be the equivalent of a check from a third-party, the electronic fund transfer.

Fridman further argues that industry parlance and legislatures refer to the "electronic authorization to debit funds from an account" as a "payment instrument," Doc. 47, but her cited cases are not at all applicable. One considers claim construction and the definition of "payment instrument" under the patent at issue in that case, with no reasoning that could allow the Court to extrapolate here; the other concerns the definition of "payment instrument" under Maryland law. *See Stambler v. JPMorgan Chase & Co.*, No. 2-08-cv-204, 2010 WL 1443285, at *12 (E.D. Tex. Apr. 9, 2010); *U.S. v. Talebnejad*, 342 F. Supp. 2d 346, 357 (D. Md. 2004). Neither addresses TILA or Reg. Z.

Fridman cannot point to any evidence to show that the NYCB ACH payment processing system is not an electronic fund transfer. Therefore the crediting of her account as of NYCB's receipt of the transfer from Bank of America was timely under Reg. Z.

## CONCLUSION

For the foregoing reasons, NYCB's motion for summary judgment [34] is granted. Judgment is granted in favor of NYCB on Fridman's claim. Fridman's motion for class certification [14] is therefore denied as moot. The case is terminated.

Dated: May 27, 2014

_____
SARA L. ELLIS
United States District Judge

9